UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIAL DIAB,

        Plaintiff,

v.

TEXTRON, INC., TEXTRON FASTENING
SYSTEMS, INC., TFS FASTENING SYSTEMS
LLC, & ACUMENT FASTENING SYSTEMS
LLC,

        Defendants.
_____/

Case No. 07-11681

HONORABLE SEAN F. COX
United States District Judge

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Gabrial Diab ("Diab") filed this breach of contract and promissory estoppel action on April 16, 2007. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have fully briefed the issues, and the Court heard oral argument on October 9, 2008. For the reasons that follow, Plaintiff's claim for promissory estoppel in Count III is **DISMISSED**, and Defendant's motion shall be **DENIED**.

### I. BACKGROUND

On October 15, 2001, Diab began working for Defendant Textron Fastening Systems, Inc., a subsidiary of Textron, Inc., as Director of Product Costing and Quoting Process. (for ease of identification, all Defendants will be cumulatively referred to as "Textron" unless otherwise noted). The terms of Diab's employment with Textron were negotiated by himself and Mr. Daryl Schuett, the company's Vice President Finance, and were reduced to a hiring letter dated

1

September 27, 2001 (referred to in this opinion as the "Contract"). The terms of that Contract are as follows:

> On behalf of Textron Fastening Systems, I am pleased to make you an offer of employment as Director of Product Costing and Quoting Process reporting directly to me effective October 15, 2001. The position will be located in our Corporate office in Sterling Heights, MI. The details of this offer include the following:
>
> **Annual Base Salary:**
>
> Your annual starting salary will be $110,000 (paid semi-monthly).
>
> **Medical Insurance:**
>
> Our current health care plan for the year 2001 is provided through Blue Cross Blue Shield. Medical coverage is provided at no cost to the employee.
>
> Should you elect, you will need to provide on your first day of employment Social Security numbers for yourself or any dependants being added to the medical coverage.
>
> **Dental Coverage:**
>
> Dental coverage is provided at no cost to the employee.
>
> **Life Insurance:**
>
> The amount is two times your base salary with the option to purchase additional coverage for you and your family.
>
> **Textron Savings Plan:**
>
> You are eligible to participate in the Textron Stock Savings Plan commencing on your date of hire. This plan allows you to invest up to twenty (20%) of your base earnings. Total pre-tax is limited to $10,500. For every dollar you invest, Textron contributes fifty cents of Textron common stock with a maximum contribution by Textron of 5%. Employee contributions are 100% vested at al times with a graduated vesting schedule for Textron contributions which are 100% vested in five (5) years.
>
> **Textron Pension Plan:**
>
> You will be eligible to participate in the Textron Pension Plan immediately upon hire.

### Auto Allowance:

You will be provided with a $700.00 per month auto allowance.

### Annual Incentive Compensation:

Under the provisions of the Textron Annual Incentive Compensation Plan you will be considered for a target award of 20% for the 2002 plan year.

### Stock Options:

You are eligible to receive Textron stock options ranging from 1200-3000.

### Vacation:

You will be eligible for (20) vacation days each calendar year. Your vacation for calendar year 2001 will be prorated and you will be eligible for five vacation days in calendar year 2001.

### Visa - Work Permit:

Textron is Committed with supporting the initiative of obtaining additional work permits in conjunction with your future employment with Textron Fastening System Automotive Solutions. Therefore, Textron Fastening Systems Automotive Solutions will provide a maximum of five thousand dollars toward the expenses incurred in the legal and administrative fees in obtaining the appropriate work permits.

### Reference Checks and Drug Screening:

This offer of employment is contingent upon the successful completion of reference checks and a pre-employment drug screening.

### Employment At Will:

You should be aware that all employment with Textron is at will. This means that, either you or the Company may terminate this relationship at any time, for any reason, with or without cause or notice.

(September 21, 2001 Letter, Defendant's Ex. A).

Textron was also the administrator for the Long Term Incentive Plan (the "Plan"), a benefit plan for eligible Textron executives which provides retention incentives such as stock

options and restricted stock:

> 1.1 *Purpose*. This plan authorizes the grant of stock options, performance share units, and restricted stock to officers and other selected employees of Textron Inc. and its related companies to induce them to continue as Textron employees and to reward them for improvement in Textron's long-term performance.

(1999 Long Term Incentive Plan, Defendant's Ex. C, §1.1). Neither party to this lawsuit disputes that the Plan contained a certain amount of discretion in the form and amount of grants potentially given to eligible executives, though Diab argues the Plan cannot supersede the terms of the Contract between himself and Textron. (Plaintiff's Reply, p.8).

Beginning in 2003, Plan administrators changed grants under the Plan for employees who lived outside the United States from stock options to restricted stock units. (Dep. of Jon Fliss, Defendant's Ex. E, p.29). The primary reason for the change was that tax consequences in some foreign countries were more adverse when granting options instead of restricted stock. At that time, employees were classified as foreign based upon their country of residence, which included Diab as he lived in Canada. Consistent with the terms of the Plan, Diab was given restricted stock in 2003 and 2004 instead of stock options. (Restricted Stock Gifts, Defendant's Ex. F pp.1-2).

Diab objected to this change in granting by the Plan, arguing he was entitled to receive stock options instead of restricted stock. (Dep. of Gabrial Diab, Defendant's Ex. K, p.193). After objecting to this policy change through numerous emails and conversations with superior officers of Textron, Diab was told that the only way they would change his grant status from foreign to domestic was if Diab moved to the United States. (Emails From Gabrial Diab to Textron Officers, Plaintiff's Ex. 5).

4

Diab filed his original complaint in this matter on April 16, 2007. His amended complaint, filed October 3, 2007, alleged three causes of action: breach of contract (Count I), wrongful termination/retaliation in violation of Michigan's public policy (Count II), and promissory estoppel (Count III). Count I alleges that Textron breached the Contract when they granted Diab restricted stock in lieu of stock options. Count II, in which Diab alleged he was wrongfully terminated for his objections to the change from stock options to restricted stock, was previously dismissed. Count III is an alternative to Count I, in which Diab alleges he detrimentally relied upon Textron's promise to grant him stock options.

On June 30, 2008, Textron filed this Motion for Summary Judgment. In that motion, Textron requested that the Court find: (1) that Diab had no contractual right to receive stock options rather than restricted stock; (2) that Diab waived any contractual rights he may have had in receiving stock options rather than restricted stock; (3) that Diab's claim for promissory estoppel should be dismissed; and (4) that Acument Fastening Systems LLC ("Acument") has no successor liability.

At oral argument, Diab and Textron each agreed that the terms of the employment agreement that govern are clear and unambiguous, and that therefore Diab's claim for promissory estoppel under Count III should be dismissed. Accordingly, the only issues to be decided by the Court pertain to Diab's right to stock options, any waiver of such right by Diab, and Acument's successor liability.

## II. STANDARD OF REVIEW

Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

**A. Plaintiff's Claim for Breach of Contract**

As this is a diversity case interpreting the terms of a contract, Michigan law controls. *Central Jersey Dodge Truck Ctr., Inc. v. Sightseer Corp.*, 608 F.2d 1106, 1109 (6th Cir.1979). Michigan law holds that "[a] contract is to be construed as a whole; that all parts are to be harmonized so far as reasonably possible." *Laevin v. St. Vincent De Paul Society of Grand Rapids*, 323 Mich. 607, 609 (1949)(internal citations omitted). It is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. *In re Smith*, 480 Mich. 19, 24 (2008). Courts interpret the words used in a contract in accordance with their commonly used meanings, *Citizens Ins. Co. v. Pro-Seal Service Group, Inc*., 477 Mich. 75, 84 (2007), and must enforce an unambiguous contract according to its plain terms. *Kay Inv. Co. LLC v. Brody Realty No. 1 LLC*, 273 Mich.App. 432, 437 (2006).

In this case, Diab and Textron each agree that the September 27, 2001 hiring letter to Diab is a contract, that its terms are plain and unambiguous, and that the language of the Contract controls any rights Diab may have to stock options. (Plaintiff's Br., p.15; Defendant's

Supp.Br., p.4). The Court finds the plain language of the Contract grants Diab the right to receive stock options at his election for the following reasons.

The plain language of the Contract states that "[y]ou [Diab] are eligible to receive Textron *stock options* ranging from 1200-3000." (Ex. A, p.2)(emphasis added). The clause does not say "stock options or restricted stock," in fact the term "restricted stock" appears nowhere within the four corners of the Contract. If Textron had intended to reserve this right to change the nature of stock gifts to Diab, they easily could have done so by adding language to the terms of the Contract. This Court cannot read terms into the Contract which are not there. *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 199-200 (2008).

Second, the relevant portion of the Contract states that "[y]ou [Diab] are *eligible* to receive Textron stock options ranging from 1200-3000." (Ex. A, p.2)(emphasis added). The word "eligible" appears several other times in different clauses of the Contract, and its meaning must be interpreted as uniform throughout the document if at all possible. *Laevin*, 323 Mich. 607, 609 (1949). Most notably, the word appears in the clauses granting Diab the right to receive vacation days ("You will be eligible for (20) vacation days each calendar year"), the right to participate in the pension plan ("You will be eligible to participate in the Textron Pension Plan immediately upon hire"), and the savings plan ("You are eligible to participate in the Textron Savings Plan commencing on your date of hire"). (Ex. A, pp. 1-2). All three of these other clauses use the term "eligible" to describe benefits Diab could elect at his own choosing. This choice of the word "eligible" to characterize Diab's right to stock options, when construing that term consistently throughout the Contract, undercuts Textron's argument that Diab did not have an absolute right to stock options instead of restricted stock.

The Contract uses other language to describe situations where Textron retained discretion to award compensation benefits, which was not used in the stock options clause. Under the "Annual Incentive Compensation" heading, the Contract states "...you *will be considered* for a target award of 20% for the 2002 plan year." (Ex. A, p.2)(emphasis added). This clause, unlike the stock options clause, clearly reserves discretion to Textron to decide whether the award is merited. That the Contract explicitly uses such discretionary language only two lines above the stock options clause, but not within the options clause itself, undercuts Textron's argument the award of stock options was discretionary.

Textron is incorrect in their argument that discretion vested in the terms of the Plan allows Textron to unilaterally amend the terms of Diab's compensation. Diab's contract did not acknowledge any discretion being reserved in the Plan; the Long Term Incentive Plan is not even mentioned within the four corners of the Contract, and this Court cannot read terms allowing for such discretion into the Contract which are not there. *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 199-200 (2008). While Textron is correct that the Plan does reserve discretion to amend its own terms and conditions, this does not mean the Plan's terms can be allowed to supersede those of the previously existing Contract between Textron and Diab. The binding contract between Diab and Textron in this case prevents Textron from being able to unilaterally amend Diab's right to stock options. *Peterson v. Grand Trunk Western R.R. Co.*, 683 F.Supp. 649, 652 (E.D.Mich.1988). This argument by Textron is further undercut by the presence of other similar documents being referenced in the Contract, including the Textron Stock Savings Plan, the Textron Pension Plan, and the Textron Annual Incentive Compensation Plan, showing the drafters of the Contract knew quite well how to incorporate third party documents into the

Contract if they so chose.

Finally, as Diab argues in his brief, the "obvious intent of the Contract was to set compensation and benefits <u>over the course of Plaintiff's employment</u>." (Plaintiff's Br., p.7)(emphasis in original). Textron argues that, at best, Diab can only claim a right to a one-time granting of stock options because the clause does not include the term "annually." (Defendant's Br., p.6). Textron directs the Court to other clauses within the Contract which outline temporal restrictions on benefits, such as the right to salary paid "semi-monthly," a car allowance "per month," and vacation days "each calendar year." *Id.* However, the absence of such language can be seen in other clauses, such as those giving Diab rights to medical coverage, dental coverage, and life insurance, and Diab points out those clauses certainly were intended to also cover him "<u>over the course of Plaintiff's employment</u>." (Plaintiff's Br., p.7)(emphasis in original). There is no evidence within the language of the stock options clause that the parties intended this right to be a one-time gift to Diab. Given the intent of the parties that the Contract spell out Diab's ongoing benefits during employment, this Court finds no language within its terms supporting Textron's argument for a one-time gift of stock options as being the intent of that clause.

### B. Plaintiff's Alleged Waiver of Contractual Rights

Textron argues (Defendant's Br., p.11) that Diab's acceptance of restricted stock in 2003 and 2004 constitutes a waiver of any claim by him for stock options. As Diab states in his brief (Plaintiff's Br., p.13), the acceptance of restricted stock is not necessarily dispositive of the waiver issue. In *H.J. Tucker v. Allied Chucker and Engine Co.*, 234 Mich.App. 550, 564 (1999),

that court held that evidence of waiver must be accompanied by "an actual intention to relinquish it, or such conduct as warrants an inference of relinquishment."

"Waiver must be established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to...waive the particular original contract." *Sandler v. AII Acquisition Corp.*, 954 F.2d 382 (6th Cir.1992). Similar to *H.J. Tucker*, where the plaintiff objected to a unilateral reduction to his commission structure, here Diab complained about the change to his stock grants from options to restricted stock. (Emails From Gabrial Diab to Textron Officers, Plaintiff's Ex. 5). Like the plaintiff in *H.J. Tucker*, "the evidence showed that [Diab] immediately and consistently made objections to defendant regarding the change in commissions and that he formalized his objections in letters to defendant." *H.J. Tucker* at 565. The evidence in this case does not clearly and convincingly support the argument that Diab waived any right he had to stock options by accepting the restricted stock given to him in 2003 and 2004.

### C. Acument's Successor Liability

Textron has argued that one of its subsidiary entities, Acument Fastening Systems LLC, cannot have any potential liability to Diab because Acument was not in existence at the time the alleged cause of action accrued. (Defendant's Br., p.15). Diab argues Textron cannot satisfy their burden on this issue without producing documents concerning the sale of assets from Textron, Inc. to the other named corporate entities. (Plaintiff's Br., p.19).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The Court finds that Textron has not met this initial burden in arguing for summary judgment on the issue of Acument's successor liability, and for that reason their claim will be denied.

The only evidence Textron proffers to support their claim is a computer printout showing Acument was registered on November 17, 2005 as limited liability corporation in the state of Delaware. (Defendant's Ex. B). Textron, Inc. is a Delaware corporation (Defendant's Answer, Doc.#23, p.2), and the legal effect of a sale of assets transaction between Delaware corporate entities is governed by Delaware law. *In re Asbestos Litigation*, 517 A.2d 697, 699 (Del.Super.1986).

The general rule concerning successor liability under Delaware law is that, when one company sells or transfers all of its assets to another, the purchaser does not become liable for the debts and liabilities of the selling entity. *Elmer v. Tenneco Resins, Inc.*, 698 F.Supp. 535, 540 (D.Del.1988). However, purchasers are still liable for such obligations under the following four situations: (1) the purchaser expressly or impliedly assumes such obligations; (2) the transaction amounts to a consolidation or merger of the seller into the purchasers; (3) the purchaser is merely a continuation of the seller; or (4) the transaction has been entered into fraudulently. *Id.* Textron did not address these issues in their brief for summary judgment, nor were such issues raised at oral argument. Textron has provided no depositions, answers to interrogatories, admissions, or affidavits filed which show the absence of a genuine issue of material fact on these issues. Textron cannot meet their burden under a motion for summary judgement without producing documents or testimony which negate these exceptions. Due to

11

Textron's failure to bring any evidence to support their claim for summary judgment, this Court will deny their motion with respect to Acument's successor liability.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's promissory estoppel claim under Count III is **DISMISSED**, and Defendant's Motion for Summary Judgment, brought pursuant to Fed.R.Civ.P. 56(c), is **DENIED**.

**IT IS SO ORDERED**.

                S/Sean F. Cox
                Sean F. Cox
                United States District Judge

Dated: November 6, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 6, 2008, by electronic and/or ordinary mail.

                S/Jennifer Hernandez
                Case Manager