UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIAL DIAB,                                   Case No. 07-11681

        Plaintiff,                            HONORABLE SEAN F. COX
                                                                       United States District Judge

v.

TEXTRON, INC. et al.,

        Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW [Doc. No.90]

       Plaintiff Gabrial Diab ("Diab") filed this diversity breach of contract action on April 16, 2007.  At the close of Diab's testimony during the jury trial on June 15, 2009, the Defendants made an oral motion for judgment as a matter of law.  The Court heard oral argument on June 15, 2009, and ordered the parties to file briefs in support of their arguments.  Both parties filed briefs on the issues on June 15, 2009.  For the reasons that follow, the Defendants' "Motion for Judgment as a Matter of Law" [Doc. No. 90] is **DENIED**.

BACKGROUND

       During cross-examination before the Court on June 15, 2009, Diab admitted that, while his employment contract included a provision for annual grants of stock options, the contract was silent on the vesting period for those stock options:

> Q: Now, the contract on which you're relying in this case, which was your Exhibit A, your offer letter, this offer letter says you would receive 1200 to 3000 options, correct?

1

>   A: Correct.
>   Q: It says nothing in that offer letter about vesting periods, correct?
>   A: Correct.

[Tr. of June 15, 2009 Diab Cross-examination, p.6].  Diab also admitted that prior stock options awards pursuant to his employment contract had been subject to a vesting schedule, and that this vesting schedule did not violate the terms of his employment contract:

>   Q: Now, in 2005, you received 1430 options? Correct?  Do you have that in front of you?  It's your Exhibit I?
>   A: Fourteen hundred and thirty, yes, sir.
>   Q: And that had a vesting schedule of one-third in one year, one-third in two years, and one-third in three years, correct?
>   A: Correct.
>   Q: So a portion of these options - - under this 2005 award, Textron granted you options that had a three-year vesting period?
>   A: Yes, sir.
>   Q: It would not vest for three years after they made the award, correct?
>   A: The full amount would not vest for three years, but a third would vest after one year, a third after two years, yes.
>   Q: And a third, there is one portion that would not vest for three years?
>   A: Correct.
>   Q: It had a three-year vesting period set by Textron, correct?
>   A: Yes, sir.
>   Q: And that was not a breach of Textron's contract with yo to set the - - that portion of the award for three years, correct?
>   A: No, sir.

*Id*. at pp.7-8.

Also during cross-examination, Diab responded to a hypothetical scenario posited by Defense Counsel:

>   Q: In 2003 you were awarded restricted stock, correct?
>   A: Correct.
>   Q: Four hundred shares?
>   A: Yes, sir.
>   Q: And none of those vested for at least three years, correct?
>   A: Correct.
>   Q: And if, instead of the 400 shares of restricted stock you had been awarded

>   > 1875 shares of options and they were vested the same way, none of those would have had any value to you, correct?
>   >
>   > A: I see. If I understand your question, if those options were vested the same as the [restricted stock units], meaning you wait three years, you're correct, they would not have had any value, yes.
>   >
>   > Q: And that would also be true of 2004, correct?
>   >
>   > A: Correct.
>   >
>   > Q: And you would be no - - your situation would be no different today than if you had been awarded options with that vesting schedule?
>   >
>   > A: If options were the same vesting schedule as [restricted stock units], I would be no different, but they weren't. They were a different vesting schedule and they vested sooner than [restricted stock units].

*Id*. at pp. 12-13.

After Diab's testimony, the Defendants moved for judgment as a matter of law pursuant to FED. R. CIV. P. 50(a). Defendants argue that Diab "must satisfy the burden of proving that the breach was at least a cause of the alleged damages." [Def.'s Br., Doc. No. 90, p.2]. "Here, the alleged breach of failing to award damages is not the cause of damages. Rather, it is the setting of the vesting period of 3 years that caused the alleged damages." *Id*. at 3. According to the Defendants:

> . . . [E]ven if Defendants had fully performed the contract there would be no damages. The awarding of stock options for the 3 year period, i.e., the same vesting period as restricted stock, would not have been a breach of the contract. Yet Plaintiff still would have suffered the same loss; the options awarded would not have vested before he left and therefore he would be no better off than he was in receiving restricted stock.

*Id*. at 5.

## STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure provides that a Court may grant judgment as a matter of law where it finds "that a reasonable jury would not have a legally sufficient basis to find for a party" on a dispositive issue. FED. R. CIV. P. 50(a)(1). Because this

3

is a diversity case applying Michigan law, the Court applies the standard of review of Michigan Courts. *See Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466 (6th Cir. 2009), *quoting Kusens v. Pascal Co.*, 448 F.3d 349 360 (6th Cir. 2006) ("In diversity cases, where a Rule 50 motion is based on the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action").

As the Sixth Circuit noted in *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 894 n.3 (6th Cir. 1997), "Michigan courts use the terms 'directed verdict' and 'judgment notwithstanding the verdict' rather than judgment as a matter of law." Pursuant to Michigan law, on a motion for directed verdict the Court must:

> view [ ] the evidence and all legitimate inferences in the light most favorable to the nonmoving party. And a directed verdict may be granted only if, after viewing all of the evidence in the light most favorable to the party opposing the directed verdict, reasonable minds could not differ on any question of material fact.

*Betts*, 558 F.3d at 467, *quoting Elezovic v. Ford Motor Co.*, 472 Mich. 408, 418 (2005).

ANALYSIS

Defendants argue that they retained discretion to set the vesting schedule for the stock options to which Diab claims entitlement. Because the Defendants had the discretion to set that schedule, therefore, Defendants argue that *they could have* set the vesting schedule for Diab's stock options on the same time-frame as they set the vesting schedule for the restricted stock units Diab was given. Therefore, under the Defendants' logic, Diab cannot show that the Defendants' failure to grant Diab stock options, a purported breach of Diab's employment contract, resulted in damages to Diab.

The Defendants offer no case law, under Michigan law or otherwise, in support of the

above argument. Rather, Defendants rely upon a single footnote in a contracts treatise:

> There is, of course, a fundamental requirement, similar to that imposed in tort cases, that the breach of contract be the cause in fact of the loss. . . . an even more fundamental requirement, of course, is that the breach must have caused loss.

[Def.'s Br., Doc. No. 90, p.2, *citing Farnsworth on Contracts*, §12.1 at 150, n.7 (3d Ed 2004)].

At best, the facts admitted at trial in the instant action only support Defendants' assertion that they had the power to set the vesting schedule for Diab's stock options in a manner similar to the vesting period on Diab's restricted stock units. Such a showing is not sufficient for the Court to render judgment for the Defendants as a matter of law. To rule for the Defendants, the Court would have to infer that, merely because the Defendants had the power to set the vesting schedule for the stock options Diab never received, the Defendants would have exercised that power in this case and given Diab's stock options a different vesting period than other employees received.

Pursuant to the Michigan Supreme Court's holding in *Elezovic*, *supra*, the Court must view "all of the evidence in the light most favorable to the party opposing" the motion. For purposes of this motion, therefore, the Court must assume that, despite their power to do so, the Defendants *would not* have adopted a different vesting schedule for Diab's stock options than for those awarded to other employees. As such, Diab can still meet his burden of proof that the Defendants' breach caused his damages, and the Defendants' motion for judgment as a matter of law [Doc. No. 90] is therefore **DENIED**.

## CONCLUSION

For the reasons set forth above, Defendants' "Motion for Judgment as a Matter of Law"

[Doc. No. 90] is **DENIED**.

    **IT IS SO ORDERED**.

                       S/Sean F. Cox
                       Sean F. Cox
                       United States District Judge

Dated: June 17, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 17, 2009, by electronic and/or ordinary mail.

                       S/Jennifer Hernandez
                       Case Manager