UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIAL DIAB,                                        Case No. 07-11681

              Plaintiff,                            HONORABLE SEAN F. COX
                                                     United States District Judge

v.

TEXTRON, INC. et al.,

              Defendants.
_____/


OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT AS A MATTER OF LAW [Doc. No. 93]


      Plaintiff Gabrial Diab ("Diab") filed this diversity breach of contract action on April 16,

2007.  At the close of the Defendants' proofs during the jury trial on June 16, 2009, Diab made

an oral motion for partial judgment as a matter of law regarding the Defendants' alleged breach

of contract.  The Court heard oral argument on June 16, 2009, and ordered the parties to file

briefs in support of their arguments.  Both parties filed briefs on the issues on June 16, 2009.  For

the reasons that follow, the Plaintiff's "Motion for Judgment as a Matter of Law Regarding

Breach of Contract" [Doc. No. 93] is **GRANTED**.

BACKGROUND

      Defendants filed a Motion for Summary Judgment [Doc. No. 47] on June 30, 2008.  In

that document, Defendants argued that the language in Diab's hiring letter with Textron

Fastening Systems dated September 21, 2007 [Ex. A to Def.'s Motion, Doc. No. 47] ("the

Contract") was plain and unambiguous.  *Id*. at 6 ("Here, the language is clear and without

1

ambiguity."). This position was affirmed by Defense Counsel at the October 9, 2008 hearing:

> THE COURT: Ms. Orr, on page six of your brief, top of the page, you state that
>     the language of the contract is clear and without ambiguity, correct?
> MS. ORR: Correct.
> THE COURT: And that's your position?
> MS. ORR: Yes, sir.
>
> **********
>
> THE COURT: So the September 27, 2001 letter to the plaintiff from Mr. Schuett
>     [Def.'s Ex. A, Doc. No. 47] is the employment contract?
> MS. ORR: Correct.
> THE COURT: Which is clear and unambiguous, correct?
> MS. ORR: Correct.

[Tr. of October 9, 2008 Hearing, Doc. No. 63, pp.3-4, 6].

Diab likewise agreed, and continues to agree, that the Contract is clear and free from ambiguity. *See, e.g.,* Pl.'s Brief in Opposition to Summary Judgment, Doc. No. 47, p.15; Tr. of October 9, 2008 Hearing, Doc. No. 63, p.29. However, while both parties agreed that the Contract's plain language was free from ambiguity, the parties "disagree[d] as to what the [proper] interpretation is" of the Contract's terms. [Doc. No. 63, p.29].

Construing the admittedly plain and unambiguous language of the Contract between the parties, the Court held that the Contract grants Diab the right to receive annual stock options at his election:

> In this case, Diab and Textron each agree that the September 27, 2001 hiring letter
> to Diab is a contract, that its terms are plain and unambiguous, and that the
> language of the Contract controls any rights Diab may have to stock options.
> (Plaintiff's Br., p.15; Defendant's Supp.Br., p.4). The Court finds the plain
> language of the Contract grants Diab the right to receive stock options at his
> election for the following reasons.

[November 6, 2008 Opinion & Order, Doc. No. 56, p.7].

During the trial in this case, no evidence was presented to the jury showing that the Defendants paid stock options to Diab as required for the years 2003 and 2004. Instead, all the evidence showed that the Defendants failed to offer stock options to Diab in 2003 and 2004.

In moving for Judgment as a Matter of Law under Fed. R. Civ. P. 50(a), Diab argues that, "[a]s this Court has held, the contract entitled Mr. Diab to receive stock options at his election, not [restricted stock units]." [Pl.'s Br., Doc. No. 93, p.2 (emphasis in original)]. "Defendant[s] did not give Mr. Diab stock options and thereby breached the terms of the contract." *Id*.

In opposing Diab's motion, the Defendants make two primary arguments. First, the Defendants argue that "it is axiomatic that in order for there to be liability for breach of contract, the breach must cause the damage Plaintiff is seeking to recover." [Def.'s Br., Doc. No. 91, p.2]. This argument, regarding the vesting period of the stock options Diab alleges he should have received, was considered and rejected by the Court in it's June 17, 2009 Opinion & Order [Doc. No. 95], and will be rejected here for the same reasons explained therein. [*See* Doc. No. 95, pp.4-5].

Second, the Defendants argue that "an additional ground for denying Plaintiff's motion is the doctrine of substantial performance." [Def.'s Br., Doc. No. 91, p.5]. "There is no basis to find as a matter of law that awarding restricted stock instead of stock options was such a deviation from the terms of the agreement, as to deny Plaintiff the important and essential benefits for which the contract was made." *Id*. at 6.

## STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure provides that a Court may grant

judgment as a matter of law where it finds "that a reasonable jury would not have a legally sufficient basis to find for a party" on a dispositive issue. FED. R. CIV. P. 50(a)(1). Because this is a diversity case applying Michigan law, the Court applies the standard of review of Michigan Courts. *See Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466 (6th Cir. 2009), *quoting Kusens v. Pascal Co.*, 448 F.3d 349 360 (6th Cir. 2006) ("In diversity cases, where a Rule 50 motion is based on the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action").

As the Sixth Circuit noted in *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 894 n.3 (6th Cir. 1997), "Michigan courts use the terms 'directed verdict' and 'judgment notwithstanding the verdict' rather than judgment as a matter of law." Pursuant to Michigan law, on a motion for directed verdict the Court must:

> view [ ] the evidence and all legitimate inferences in the light most favorable to the nonmoving party. And a directed verdict may be granted only if, after viewing all of the evidence in the light most favorable to the party opposing the directed verdict, reasonable minds could not differ on any question of material fact.

*Betts*, 558 F.3d at 467, *quoting Elezovic v. Ford Motor Co.*, 472 Mich. 408, 418 (2005).

ANALYSIS

The Court finds that the Defendants' argument regarding their "substantial performance" of the Contract fails on its merits. Defendants own LTIC Plan documents clearly recognize that stock options and restricted stock units are different forms of compensation, are explained in separate sections of the documents, and are controlled by completely separate terms and conditions [*See* Pl.'s Ex. Q, pp. 5, 9].

Further, Defendant's sole witness, Cheryl Bagaglia, specifically testified regarding the

4

substantial differences between stock options and restricted stock units.  Specifically, Bagaglia testified that an award of stock options grants the employee the right to buy stock at a certain price, whereas restricted stock units represent an outright gift of stock.  Bagaglia further testified that stock options have a significantly shorter vesting period than do restricted stock units under the LTIC Plan.  Finally, Bagaglia testified that after the sale of Textron Fastening Systems to Acument in August, 2006, unvested restricted stock units would be valueless, whereas stock options would continue to have value.  For these reasons, the Court finds that, consistent with FED. R. CIV. P. 50(a), "no reasonable jury. . .would have a sufficient legal basis" to find that the restricted stock units given to Diab constituted "substantial performance" of the Defendant's obligation to give Diab stock options in 2003 and 2004.

Even assuming the Defendants argument regarding substantial performance succeeds on its merits, the Defendants have waived that argument.  The Defendants' response brief to the instant motion [Doc. No. 91] is the first time the Defendants have raised the argument of "substantial performance," i.e., that their award of restricted stock units was substantial performance of their obligation to award Diab stock options.  This claim, issue or defense by the Defendants was not included as an affirmative defense in the Defendant's Answer [Doc. No. 26], nor was it listed in the parties' Joint Final Pretrial Order [Doc. No. 58].[1]  As such, the Defendants

---

[1] The Joint Final Pretrial Order [Doc. No. 58] confined the issue of whether a "breach" of the Contract occurred to whether the Defendants were merely required to give Diab a one-time gift of stock options.  "Plaintiff's reliance on the letter offering him employment must fail.  That document only provides that Plaintiff was eligible to receive from 1200-300 stock options, which he did a few months after becoming employed.  Thus, no breach occurred." [Doc. No. 58, p.2].  The Court already considered, and rejected, this argument in its November 6, 2008 Opinion & Order Denying Defendant's Motion for Summary Judgment [Doc. No. 56, p.9], and reaffirmed the argument's rejection in the Court's May 28, 2009 Opinion & Order Granting Plaintiff's Motion *in Limine* [Doc. No. 68, p.5].  While Defendant included one paragraph within its "Issues

5

have waived any "substantial performance" claim, issue, or defense they may have once had.  *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) ("Claims, issues, defenses, or theories of damages not included in the Pretrial Order are waived even if they appear in the Complaint. . .").

Again, the parties have already agreed that Diab's employment letter dated September 21, 2007 was a contract, and that its terms were plain and unambiguous.  Construing those plain and unambiguous terms, the Court has already found that the Defendants were required to make annual stock option awards to Diab.  No evidence admitted at trial establishes that the Defendants awarded stock options to Diab in 2003 and 2003; in fact, all the evidence admitted at trial shows that stock options were *not* granted to Diab in those years.  Given these facts, the Court finds that "no reasonable jury would. . . have a sufficient legal basis" to find that the Defendants did not breach the Contract.  As such, the Court **GRANTS** Diab's "Motion for Judgment as a Matter of Law Regarding Breach of Contract" [Doc. No. 93]

---

of Facts to be Litigated" [Doc. No. 58, p.3, ¶4] stating there was an issue of fact regarding "Whether the terms of the LTIC Plan were breached when Plaintiff received restricted stock units instead of stock options in 2003 and 2004," this inclusion within the Joint Final Pretial Order likewise does not preserve the Defendant's current argument regarding "substantial performance" for two reasons.  First, any breach of the *LTIC Plan*, as paragraph four discusses, is irrelevant to whether a breach of Diab's *employment contract* occurred.  Second, neither paragraph four, nor any other part of the Joint Final Pretrial Order, specifically contains a reference to "substantial performance" as a defense being relied upon by the Defendants.  *See* L.R. 16.2(2)(b)(3) ("The statement of the defenses or claims of defendants, or third parties, shall include legal theories.").

6

CONCLUSION

For the reasons set forth above, Plaintiff's "Motion for Judgment as a Matter of Law

Regarding Breach of Contract" [Doc. No. 93] is **GRANTED**.

**IT IS SO ORDERED**.


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 17, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on June
17, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

7