UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIAL DIAB,

      Plaintiff,

v.

TEXTRON, INC. et al.,

      Defendants.
_____/

Case No. 07-11681

HONORABLE SEAN F. COX
United States District Judge

## OPINION AND ORDER RESOLVING THE PARTIES' STIPULATED ISSUE REGARDING THE TAX RAMIFICATIONS OF MR. DIAB'S JURY VERDICT

Plaintiff Gabrial Diab ("Diab") filed this diversity breach of contract action against Defendants Textron, Inc. et al. ("the Defendants") on April 16, 2007. The parties stipulated that, should the jury return a verdict in favor of Mr. Diab, the Court would determine the tax consequences of the verdict, and what such tax consequences, if any, should be added on to the judgment [*See* July 28, 2009 Order, Doc. No. 104]. On June 18, 2009, the jury returned a verdict for Mr. Diab in the amount of $117,049.93. [*See* Doc. No. 101]. Both parties have fully briefed the taxation issue, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(e)(2). For the reasons that follow, the Court **HOLDS** that the negative tax consequences of the June 18, 2009 jury verdict for Mr. Diab amount to **$28,354.21**, and **ORDERS** that this amount be added to the June 18, 2009 jury verdict.

### BACKGROUND

On February 2, 2009, the parties filed their Joint Final Pretrial Order [Doc. No. 58], in which Mr. Diab outlined his claimed damages as follows:

1

> This Court has already ruled that there is a contract pursuant to which Plaintiff Gabrial Diab is entitled to receive stock options at his election. Plaintiff has suffered damages from Defendants' breach of this contract, and the failure to award him stock options as required by the contract. Plaintiff relies on the expert report produced in this matter which estimates Plaintiff's damages at $246,044.00.

[Joint Final Pretrial Order, Doc. No. 58, p.22, ¶10].

The expert report described *supra* is a letter, dated October 1, 2008, from an accountant named Barry Grant ("Grant") to counsel for Mr. Diab. [*See* Def.'s Ex. C, Doc. No. 79]. In that report, Mr. Grant considers a number of factors in arriving at a damages calculation of $246,044.00 for Mr. Diab's claim against the Defendants. In two separate sections of the report, however, Mr. Grant expressly disclaims any inclusion of damages related to income taxes as part of his calculations:

> Mr. Diab is a Canadian citizen residing in Canada. A lump-sum payment will be taxed as ordinary income in the year received. Any increase [*sic*] income taxes, that could exist, has not been calculated.

[Ex. C, Doc. No. 79, §§ 4.413, 4.423]. Thus, the expert report relied upon by Mr. Diab in the Joint Final Pretrial Order did not include a specific damages calculation regarding any damages related to increased income taxes Mr. Diab may have incurred because of the Defendants' breach.

On June 5, 2009, the Defendants filed their "Motion *in Limine* to Bar Evidence of, or Reference to, Damages Elements Not Claimed in the Joint Final Pretrial Order." [Doc. No. 79]. In that motion, the Defendants argued that Mr. Diab should be precluded from introducing evidence tending to show "damages for unfavorable income tax rates." [Def.'s Br., Doc. No. 79, p.2]. The Court denied the Defendant's motion *in limine*, holding as follows:

> Furthermore, for the Court to not allow tax liability considerations in this case

2

would be error. This is a diversity breach of contract action under Michigan law. Under Michigan law, courts err[] by not allowing consideration of tax consequences when valuing stock options. *See Everett v. Everett*, 195 Mich.App. 50, 52 (1992) (". . . the trial court clearly erred when it valued the [stock] options without considering the tax consequences."). The same has been held by Michigan courts with respect to suits involving other fringe benefits of employment as well. *See Lesko v. Lesko*, 184 Mich.App. 395, 403 (1990) (". . . trial court clearly erred when it valued plaintiff's banked leave days at his gross rate of pay, failing to consider the tax consequences.").

[June 10, 2009 Opinion & Order, Doc. No. 86, pp.5-6].

After the Court issued the June 10, 2009 Opinion & Order denying the Defendants' motion *in limine*, the parties stipulated that, should the jury return a verdict in favor of Plaintiff, the Court would determine the tax consequences of the verdict as a matter of law, and whether such tax consequences would result in an increase to the jury's award to Mr. Diab. [*See* June 15, 2009 Transcript, Pl.'s Ex. 2, Doc. No. 105, pp.143-44].

On June 18, 2009, the jury returned a verdict for Mr. Diab in the amount of $117,049.93. [*See* Doc. No. 101]. As such, the parties entered into a stipulation for a briefing schedule on the remaining taxation issue [*See* Doc. No. 104], and both parties have fully briefed the issues [*See* Doc. Nos. 105, 109-110].

In his brief [Doc. No. 105], Mr. Diab offered the calculations of Olympio Ferrera ("Ferrera"), the President of Ferrera Income Tax & Bookkeeping Services, Ltd., and a specialist in preparing tax returns applying the U.S.- Canadian tax treaty. [*See* Pl.'s Ex. 6, Doc. No. 105]. Mr. Ferrera calculated that the loss to Mr. Diab in 2009 due to the tax consequences of the jury's verdict amount to $31,235.00 in Canadian Dollars, or $28,354.21 in U.S. Dollars. [*See* Pl.'s Ex. 7, Doc. No. 105].

In their response brief, the Defendants do not dispute the mathematical calculations

3

performed by Mr. Ferrera on Mr. Diab's behalf. "Basically, Plaintiff's accountant performed a simple mathematical exercise for the Court. *Defendants do not dispute the math*." [Def.'s Br., Doc. No. 109, p.4 (emphasis added)]. Rather, the Defendants proffer three arguments in opposition: 1) that the Court should disregard Mr. Ferrara's analysis as the improper use of an expert; 2) that Mr. Diab was not entitled to the 50% deduction because the LTIC Plan possibly created a situation which may be analogous to a "swap agreement," precluding Mr. Diab from receiving the deduction; and 3) that Canadian statutes or common law may preclude Mr. Diab's 50% deduction on the jury verdict.

ANALYSIS

On June 15, 2009, the parties stipulated before the Court that, should the jury return a verdict in favor of Mr. Diab, the Court would determine the tax consequences of the verdict and adjust the jury's verdict accordingly. Further, the parties stipulated that they would each be free to present whatever evidence they deemed appropriate to the Court in terms of supplemental briefing and expert reports:

> [Defense Counsel] MR. BARTON: . . . I believe the parties have agreed and the Court has graciously agreed that in the event the jury returns a verdict in favor of the plaintiff in this case, the Court will determine what tax consequences, if any, should be added on to such a judgment.
> [Plaintiff's Counsel] MS. BOGAS: Agreed. And we thank the Court for taking on this task.
> THE COURT: Well, perhaps we could be more specific. Am I determining the tax consequence, the tax ramifications of the judgment, of a judgment?
> MS. BOGAS: Yes.
> MR. BARTON: Verdict.
> THE COURT: For Mr. Diab.
> MS. BOGAS: Versus what it would have been if it was a stock option.
> THE COURT: Is that correct?
> MR. BARTON: That's correct, Your Honor.
> THE COURT: Okay.
> MS. BOGAS: And then we'll both be able to present whatever we deem

> appropriate to the Court.
> THE COURT: In terms of briefing, expert reports; is that correct?
> MS. BOGAS: Yes.
> MR. BARTON: That's correct, Your Honor.
> MS. BOGAS: Yes, and I think we will both agree, because defendant did not name an expert, that we - - that you can, and use an expert if they want to in submitting a report.
> MR. BARTON: Thank you.
> THE COURT: Very Good. . . .

[June 15, 2009 Tr., Pl.'s Ex. 2, Doc. No. 105, pp.143-44]. Thus, the parties each stipulated that the Court could determine the tax consequences, if any, for Mr. Diab flowing from the Defendants' breach of contract, and that the parties were free to submit expert testimony, reports, or other information calculating such damages with their supplemental briefs on the taxation issue.

Mr. Diab's accountant, Mr. Ferrara, calculated the loss to Mr. Diab in 2009 due to the tax consequences of the jury's $117,049.93 verdict, and arrived at a figure totaling $28,354.21. [*See* Pl.'s Ex. 7, Doc. No. 105]. As discussed *supra*, the Defendants *do not dispute Mr. Ferrara's mathematical calculations*. [*See* Def.'s Br., Doc. No. 109, p.4]. Therefore, as the parties do not dispute the tax loss incurred by Mr. Diab as a result of the Defendants' breach of contract, the Court **HOLDS** that the June 18, 2009 verdict in favor of Mr. Diab created a tax loss for Mr. Diab in the amount of **$28,354.21**. As the parties stipulated that the Court could determine this amount and then add the amount to the verdict rendered by the jury [*See* June 15, 2009 Tr., Pl.'s Ex. 2, Doc. No. 105, p.143], the Court **ORDERS** that **$28,354.21 be added to the jury's $117,049.93 verdict, for a total amount of $145,404.14**.

Despite stipulating to Mr. Ferarra's mathematical calculations, the Defendants' raise three arguments why the Court should nonetheless refuse to augment the jury's verdict to take

Mr. Diab's negative tax implications into account. For the reasons that follow, the Court finds no merit in these arguments.

   I.  <u>The Defendants' Argument for Rejection of Mr. Ferrara's Analysis</u>.

The Defendants argue that the Court should disregard the information provided by Mr. Ferrara as "an improper use of [an] expert." [Def.'s Br., Doc. No.109, p.4]. The Defendants elaborate as follows:

> When foreign law is at issue, the role of the expert is to <u>explain</u> the law to the court. It is <u>not</u> the role of the expert to apply the law to the facts. Since the only evidence presented is a mathematical calculation, it can be said that, at best, Plaintiff's accountant purportedly applied the law to the facts. This is an improper use of Plaintiff's expert. . . .

*Id*. (internal citations omitted)(emphasis in original).

The Court finds no merit in this argument. The Defendants themselves, as shown in the June 15, 2009 transcript quoted *supra*, asked the Court to determine the very issue upon which Mr. Ferarra opines - the tax ramifications of the jury's verdict in favor of Mr. Diab. The Defendants also agreed that each of the parties would be free to "present whatever [the parties] deem appropriate to the Court" in support of their positions on the tax issue. [June 15, 2009 Tr., Pl.'s Ex. 2, Doc. No. 105, p.144].

The Defendants' argument on this issue centers around Mr. Ferrara's failure to explain Canadian tax law to the Court, arguing that it is "not the role of the expert to apply the law to the facts." [Def.'s Br., Doc. No. 109, p.4 (emphasis omitted)]. Notably, the Defendants do not contest the *results* of Mr. Ferarra's analysis - i.e., Mr. Diab's tax ramifications resulting from the jury verdict. As that *result* was exactly the issue the parties asked the Court to resolve, the Court finds no merit in the Defendants' objections.

II. The Defendants' Argument that the LTIC Plan Created a "Swap Arrangement."

Next, the Defendants raise what Mr. Diab argues is "a novel interpretation" of the Canadian Tax Code. [Pl.'s Reply, Doc. No. 110, p.1]. Defendants' experts speculate that the stock options Mr. Diab would have received might not have been eligible for the 50% deduction because they might not have been "prescribed shares" due to the provisions of the LTIC Plan that may be analogous to a "swap agreement." The Defendants argue as follows:

> Unless Plaintiff can prove by a preponderance of the evidence that the [LTIC] Plan did not create a swap agreement, the options are not prescribed shares entitled to favorable tax consequences. If the shares are not prescribed shares, Plaintiff is not entitled to the damages he seeks.

[Def.'s Br., Doc. No. 109, p.9].

The Court disagrees. To be sure, Mr. Diab bears the burden of proving, by a preponderance of the evidence, that he is entitled to damages stemming from the tax ramifications of the jury's verdict. However, as the Court noted in its June 10, 2009 Opinion & Order denying the Defendants' motion *in limine*, it would be clear error for the Court not to consider tax consequences when valuing stock options. [*See* Doc. No. 86, p.6, citing *Everett v. Everett*, 195 Mich.App. 50, 55 (1992); *Lesko v. Lesko*, 184 Mich.App. 395, 403 (1990)]. Further, the Defendants *stipulated to the mathematical calculations of Mr. Ferarra* - the exact issue that the parties sought for the Court to resolve. On these facts, the Court holds that Mr. Diab has satisfied his burden, under the preponderance of the evidence, to establish the tax ramifications of the jury's verdict. The Defendants have provided no authority to the contrary.

As Mr. Diab argues in his brief:

> Defendants' experts speculate that the stock options Mr. Diab would have received might not have been eligible for the 50% deduction because they might not have been "prescribed shares" due to the provision in the LTIC Plan that may

7

be analogous to the swap arrangement. However, Defendants provide no evidence that the stock options at issue, or any other stock options received by Mr. Diab, were not prescribed shares. Nor do Defendants provide any evidence that the LTIC Plan created a "swap arrangement."

[Pl.'s Reply, Doc. No. 110, pp.1-2]. The Court agrees, and Defendants' arguments to the contrary are without merit.

### III. The Defendants' Arguments Under Canadian Statutory and Common Law.

Finally, the Defendants argue that Section 7.(17) of the Canadian Tax Code, as well as the common law principle of surrogatum should apply to the facts of this case, and therefore the Court should deny any recovery to Mr. Diab for the tax consequences of the jury verdict. The Court disagrees.

The Defendants argue that Section 7(1.7) of the Canadian Tax Code states that "claims that arose as a result of the cessation of stock option rights [are] entitled to a deduction of a portion of the benefit from taxable income in much the same way as stock options." The Defendants elaborate as follows:

> Specifically, section 7(1.7) of the Act provides that, where an individual receives an amount in respect of such a cessation, the individual is now deemed, for purposes of sections 7(1)(b) and 110(1)(d) of the Act, to have "disposed of the rights" under the employee option agreement at the time the amount is received and to have received the amount as consideration for the disposition. As a result, the individual is thus deemed by section 7(1)(b) of the Act to have received an employment benefit equal to the amount so received less the amount, if any, paid by the individual to acquire those rights.

[Def.'s Br., Doc. No. 109, pp.110-11, citing Def.'s Ex. B, Doc. No. 109].

As Mr. Diab argues, however, ". . . Section 7(1.7) applies where a person loses the right to exercise vested stock options through events such as corporate restructuring and receives a payment from the employer to compensate for that loss." [Pl.'s Reply, Doc. No. 110, p.3]. "Mr.

8

Diab never lost the right to exercise 2003 and 2004 stock options, as contemplated by the Statute, *because he never had the stock options in the first place*." *Id*. (emphasis added). "Because Mr. Diab never received stock options to which he was entitled, he never had the right to exercise them, and thus could not have lost that right." *Id*. at 4. The Court agrees, and holds that the Defendants have not shown that Section 7(1.7) of the Canadian Tax Code is applicable in the present case. The Defendants' arguments to the contrary are without merit.

The Defendants' arguments regarding the common law principle of surrogatum - i.e., that the tax treatment of a damages or settlement payments will depend on the tax treatment of the item such payment is intended to replace - are also without merit. As Mr. Diab argues, "[a]pplication of surrogatum turns on a factual inquiry into the nature and purpose of the payment. Defendant provides no evidence or facts which demonstrate that surrogatum applies in this case." [Pl.'s Reply, Doc. No. 110, p.4]. The Court agrees. The Defendants offer no concrete facts proving that the common law principle of surrogatum applies in this matter - only that it *might apply*. The Defendants' arguments to the contrary are without merit.

## CONCLUSION

For the reasons set forth above, the Court **ORDERS** that **$28,354.21** be added to the jury's **$117,049.93** verdict to account for the tax liability incurred by Mr. Diab as a result of the jury's verdict, for a total amount of **$145,404.14**. Counsel for Mr. Diab is **ORDERED** to

prepare an appropriate judgment.

**IT IS SO ORDERED**.

                                    S/Sean F. Cox
                                    Sean F. Cox
                                    United States District Judge

Dated: March 3, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 3, 2010, by electronic and/or ordinary mail.

                                    S/Jennifer Hernandez
                                    Case Manager