UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIAL DIAB,

        Plaintiff,

v.

TEXTRON, INC. et al.,

        Defendants.
_____/

Case No. 07-11681

HON. SEAN F. COX
United States District Judge

## OPINION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR TO AMEND JUDGMENT [Doc. No. 116]

Plaintiff Gabrial Diab ("Diab") filed this diversity breach of contract action on April 16, 2007. The parties stipulated that, should the jury return a verdict in favor of Mr. Diab, the Court would determine the tax consequences of the verdict, and what such tax consequences, if any, should be added on to the judgment. [*See* Doc. No. 104]. On June 18, 2009, the jury returned a verdict for Mr. Diab in the amount of $117,049.93. [*See* Doc. No. 101]. The parties then each fully briefed the taxation issue, and the Court ordered that $28,354.21 in negative tax consequences be added to the jury's verdict. [*See* Doc. No. 111].

The matter is currently before the Court on Textron's renewed motion for judgment as a matter of law or to amend judgment [Doc. No. 116]. Both parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2). For the reasons that follow, the Court **DENIES** Textron's motion [Doc. No. 116].

### BACKGROUND

This cause of action has amassed a long and complex factual and procedural history - a

1

history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

Diab filed his original Complaint [Doc. No. 1] on April 16, 2007, alleging that Textron breached his employment contract by granting him restricted stock units rather than stock options. Diab amended his Complaint, twice, on May 9, 2007 [Doc. No. 3], and on October 13, 2007 [Doc. No. 18].

Textron filed its motion for summary judgment [Doc. No. 47] on June 30, 2008. In that motion, Textron argued that Diab had no contractual right to receive stock options under his employment contract instead of restricted stock units. *Id*. at pp.8-11.

In denying Textron's motion for summary judgment, the Court noted that both parties agreed that Diab's hiring letter was a contract, and that its terms were plain and unambiguous. [*See* Doc. No. 56, pp.6-7]. The Court then held that "the plain language of the Contract grant[ed] Diab the right to receive stock options at his election. . . ." *Id*. at p.7. The Court elaborated as follows:

> The plain language of the Contract states that "you are eligible to receive Textron stock options ranging from 1200-3000." The clause does not say "stock options or restricted stock," in fact the term "restricted stock" appears nowhere within the four corners of the Contract. If Textron had intended to reserve this right to change the nature of stock gifts to Diab, they easily could have done so by adding language to the terms of the Contract. This Court cannot read terms into the Contract which are not there.

[Doc. No. 56, p.7 (internal citations and emphasis omitted)]. The Court also found that Textron's Long-Term Incentive Compensation Plan could not supersede the terms of Diab's contract:

> Textron is incorrect in their argument that discretion vested in the terms of the Plan allows Textron to unilaterally amend the terms of Diab's compensation.

2

> Diab's contract did not acknowledge any discretion being reserved in the Plan; the Long Term Incentive Plan is not een mentioned within the four corners of the Contract, and this Court cannot read terms allowing for such discretion into the Contract which are not there. While Textron is correct that the Plan does reserve discretion to amend its own terms and conditions, this does not mean that the Plan's terms can be allowed to supersede those of the previously existing Contract between Textron and Diab. The binding contract between Diab and Textron in this case prevents Textron from being able to unilaterally amend Diab's right to stock options.

*Id*. at p.8 (internal citation omitted). Finally, the Court rejected Textron's alternative argument that Diab's Contract only provided for a one-time gift of stock benefits for Diab:

> There is no evidence within the language of the stock options clause that the parties intended this right to be a one-time gift to Diab. Given the intent of the parties that the Contract spell out Diab's ongoing benefits during employment, this Court finds no language within its terms supporting Textron's argument for a one-time gift of stock options as being the intent of that clause.

*Id*. at p.9. The Court therefore denied Textron's motion for summary judgment [*See* Doc. No. 56].

In light of the Court's opinion denying Textron's summary judgment motion, Diab filed his motion *in limine* [Doc. No. 65] on May 1, 2009. In that motion, consistent with the Court's prior summary judgment opinion, Diab argued that Textron should be precluded form arguing at trial "that there was no contract and/or that the contract does not require payment of stock options to Plaintiff." [Pl.'s Br., Doc. No. 65, p.9]. The Court agreed, excluding from evidence at trial "any information that the contract required the Defendants to pay annual stock options to Diab," as well as "any information that documents not specifically mentioned in the Contract, including the LTIC Plan, governed Diab's right to receive stock options at his election." *Id*. at pp.6-7.

At trial, Textron made two separate motions for judgment as a matter of law pursuant to

3

FED. R. CIV. P. 50(a). In the first such motion, Textron argued that "it [was] the setting of the vesting period of 3 years that caused [Diab's] alleged damages," rather than Textron's alleged breach of contract. [*See* Def.'s Br., Doc. No. 90, p.3]. In the second such motion, Textron argued that "Plaintiff has introduced no evidence that the committee would have exercised discretion to extend the 3 month period" for Diab to exercise his stock options. [*See* Def.'s Br., Doc. No. 92, p.2]. The Court denied both of Textron's motions for judgment as a matter of law. [*See* Doc. Nos. 95, 97].

On June 18, 2009, the jury returned a verdict for Diab in the amount of $117,049.93. [*See* Doc. No. 101]. The parties then stipulated to a briefing schedule for the Court to determine, as a matter of law, the tax ramifications of Textron's breach of contract. [*See* Doc. No. 104]. After the parties fully briefed the issues, the Court held that $28,354.21 in negative tax liability damages needed to be added to Diab's damages determined by the jury. [*See* Doc. No. 11]. The Court entered judgment in this matter on March 12, 2010. [*See* Doc. No. 114].

Textron filed its instant "Renewed Motion for Judgment as a Matter of Law or to Amend Judgment" [Doc. No. 116] on April 9, 2010. In that motion, Textron advances four primary arguments: 1) that the Court erred as a matter of law when "it (i) failed to consider the terms of the plan; (ii) interpreted "eligible" to mean "entitlement"; and (iii) added words to the Offer letter to find that it, and it alone, provided Diab with the *annual* right to receive stock options" in denying Textron's motion for summary judgment [Def.'s Br., Doc. No. 116, p.5]; 2) that the Court erred in granting Diab's motion *in limine* [Def.'s Br., Doc. No. 116, pp.8-11]; 3) that the Court erred in denying Textron's motions for judgment as a matter of law [Def.'s Br., Doc. No. 116, pp.11-14]; and 4) that the Court erred in granting $28,354.21 in tax damages to Diab [Def.'s

Br., Doc. No. 116, pp.14-20]. Diab opposes Textron's instant motion. [*See* Doc. No. 118]

STANDARD OF REVIEW

Renewed motions for judgment as a matter of law are governed by FED. R. CIV. P. 50(b). A post-trial motion for judgment as a matter of law may not advance additional grounds that were nor raised in the pre-verdict motion. *See, e.g., American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159-60 (6th Cir. 1997); *Ford v. County of Grand Traverse*, 535 F.3d 483, 492 (6th Cir. 2008); *Tuttle v. Metro. Gov't.*, 474 F.3d 307, 316 (6th Cir. 2007); *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2006). The Sixth Circuit, in *American & Foreign Ins. Co.*, explained the rationale behind this rule as being "to narrowly restrict the grounds used to overturn a jury verdict by requiring that the parties raise important issues *before* the case is submitted to the jury." *American & Foreign Ins. Co.*, 106 F.3d at 160 (emphasis in original).

To the extent that Textron's instant motion can be considered a motion for reconsideration of the Court's prior rulings as a matter of law, that motion is governed by E.D. MICH. L.R. 7.1(h). That rule states as follows, in pertinent part:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication. *The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but must also show that correcting the defect will result in a different disposition of the case.*

E.D. MICH. L.R. 7.1(h)(3) (emphasis added).

In the alternative, Textron argues that the Court should "amend the judgment reducing it by the amount of damages attributable to the alleged tax consequences." [Def.'s Motion, Doc. No. 116, p.1]. Motions to alter or amend judgment are governed by FED. R. CIV. P. 59(e). Under that rule, the Court may reconsider the judgment entered and may grant the motion for any of

5

four reasons: 1) an intervening change in the controlling law; 2) newly discovered evidence; 3) to correct a clear error of law; or 4) to prevent manifest injustice. *See GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

ANALYSIS

In its instant motion [Doc. No. 116], Textron spends considerable time and effort attempting to reargue issues of law encompassed in the Court's previous orders. Specifically, Textron argues that the Court erred as a matter of law in denying Textron's motion for summary judgment [Doc. No. 47]. Textron argues as follows:

> The Court erred as a matter of law when it it (i) failed to consider the terms of the plan; (ii) interpreted "eligible" to mean "entitlement"; and (iii) added words to the Offer letter to find that it, and it alone, provided Diab with the *annual* right to receive stock options.

[Def.'s Br., Doc. No. 116, p.5]. Textron also argues that the Court erred as a matter of law in granting Diab's motion in limine [Doc. No. 65]. [*See* Def.'s Br., Doc. No. 116, pp.11]. These arguments by Textron, however, are not proper for the Court to consider in the context of a Rule 50(b) motion for renewed judgment as a matter of law, as they were not raised by Textron in a Rule 50(a) motion.

Further, to the extent that Textron's arguments regarding these rulings can be construed as a motion for reconsideration under Local Rule 7.1(h), the Court holds that these arguments, either expressly or by implication, were already raised in the prior briefing by the parties. The Court will therefore **DENY** Textron's motion [Doc. No. 116] with respect to these two arguments. The Court will consider each of the remaining two arguments presented by Textron in turn.

   I. <u>Textron's Rule 50(b) Motion Regarding the Court's Prior Rule 50(a) Rulings</u>.

In its two Rule 50(a) motions during trial, Textron advanced two arguments: 1) that "it [was] the setting of the vesting period of 3 years that caused [Diab's] alleged damages," rather than Textron's alleged breach of contract [*see* Def.'s Br., Doc. No. 90, p.3]; and 2) that "Plaintiff has introduced no evidence that the committed would have exercised discrtion to extend the 3 month period" for Diab to exercise his stock options. [*See* Def.'s Br., Doc. No. 92, p.2]. The Court denied both of these motions for the reasons explained in separate Opinion & Orders dated June 17, 2009. [*See* Doc. Nos. 95, 97].

In its instant Rule 50(b) motion, Textron raises the same arguments that were raised, both explicitly and by implication, in its prior Rule 50(a) motions. [*Compare* Def.'s Br., Doc. No. 116, pp.11-14, *with* Def.'s Brs., Doc. Nos. 90, 92]. Nothing contained within Textron's current brief [Doc. No. 116] casts doubt upon the Court's prior rulings denying Textron's prior Rule 50(a) motions. As such, the Court **DENIES** Textron's motion with respect to those issues.

II.   Textron's Rule 59(e) Motion Regarding Diab's Negative Tax Consequences.

Textron's final argument in this motion concerns the Court's March 3, 2010 Opinion & Order [Doc. No. 111] concerning Diab's negative tax consequences as a result of this action. Again, consistent with Rule 59(e), Textron argues that the Court's Opinion & Order [Doc. No. 111] was "a rule of law and the Court erred in so ruling." [Def.'s Br., Doc. No. 116, p.20].

The Court disagrees. In its instant Rule 59(e) motion, Textron raises the same arguments that it raised, both explicitly and by implication, in its prior briefing on the tax consequences issue. [*Compare* Def.'s Br., Doc. No. 116, pp.14-20, *with* Def.'s Br., Doc. No. 109]. Nothing within Textron's current brief [Doc. No. 116] casts doubt upon the Court's prior ruling on the tax consequences issue. As such, the Court **DENIES** Textron's motion with respect to this issue.

CONCLUSION

For the reasons set forth above, Textron's "Renewed Motion for Judgment as a Matter of Law or to Amend Judgment" [Doc. No. 116] is **DENIED**.

**IT IS SO ORDERED**.

<u>S/Sean F. Cox</u>
Sean F. Cox
United States District Judge

Dated: June 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 25, 2010, by electronic and/or ordinary mail.

<u>S/Jennifer Hernandez</u>
Case Manager